Charles **PASCHALL, Jr.**, Appellant

v.

**BANK OF AMERICA, N.A.**, Appellee.

No. 05–07–00800–CV.

Court of Appeals of Texas,
Dallas.

Aug. 15, 2008.

Larry A. Flournoy, Jr., Jordan, Houser & Flournoy, L.L.P., Dallas, Tanya S. Rodak, Jordan, Houser & Flournoy, L.L.P., Richardson, TX, for Appellant.

Stacy R. Obenhaus, William G. Whitehill, Gardere, Wynne, Sewell, L.L.P., Richard T. Cheatham, Holman Robertson Eldridge, P.C., Joseph O. Collins, Kessler Collins, P.C., Dallas, Larry M. Wolfish, Wolfish & Newman, P.C., Addison, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Charles Paschall, Jr. appeals a summary judgment in favor of Bank of America, N.A. in a declaratory judgment action to construe a trust instrument. In his sole issue, appellant contends the trial court erred in adopting appellee's construction and granting summary judgment. We affirm.

Appellant and appellee agreed the trust instrument was unambiguous, but then offered the trial court conflicting constructions. The question is whether settlor Sue Bain Groves intended to authorize the trustee to make distributions to a grandchild's offspring during the grandchild's lifetime and involves the meaning of the word "descendants" in the trust agreement.

Appellee moved for summary judgment and appellant moved for partial summary judgment. Appeal is brought only on the ruling on appellee's motion. We review the summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We determine whether appellee met its burden by establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident*, 128 S.W.3d at 215–16.

The critical language is set out in Item II which discusses how the trust would be administered after settlor Sue Bain Groves's death:

### ITEM II.

Upon the death of Settlor the trust shall be governed by the following provisions:

A. *Division of Trust Principal into Shares.*

The Trustee shall immediately divide the trust estate into equal shares and it is directed to set aside one of such shares for the benefit of each of Settlor's grandchildren then living, and one of such shares for the benefit of the living descendants of any of Settlor's grandchildren then dead. Each such share shall be a separate and distinct trust. Such date is hereinafter sometimes referred to as the "Division Date."

Settlor's grandchildren who are living at the date of the execution of this Agreement are SUE PASCHALL, BARBARA E. PASCHALL and CHARLES PASCHALL, JR.

B. *Distribution of Income and Principal.*

(1) The Trustee shall distribute from each separate trust at any time and from time to time and at such intervals as it shall determine in its sole and absolute discretion, to or for the benefit of Settlor's daughter, BARBARA GROVES PASCHALL, such portion of the income and/or principal of each of the separate trusts provided for hereunder as it shall determine to be advisable in its sole and absolute discretion for the care, maintenance and support of said daughter, considering the distributions made for her from other trusts hereunder and also considering to such extent as the Trustee deems advisable in its sole and absolute discretion resources otherwise available to such daughter for such purposes. Any such distributions shall be charged equally to all trusts hereunder.

(2) The Trustee shall distribute from each separate trust at any time and from time to time and at such intervals as it shall determine in its sole and absolute discretion, to or for the benefit of such grandchild, or the descendants of a grandchild, for whom such trust is held, such portion of the income and/or principal of such separate trust as it shall determine to be advisable in its sole and absolute discretion, for the care, education, maintenance, family needs, and support of said grandchild or descendants, as the case may be, considering to such extent as the Trustee deems advisable in its sole and absolute discretion, resources otherwise available to said grandchild or descendants for such pur-poses. Such distribution need in no way be equal among descendants of a grandchild . . . .

\* \* \*

(5) Upon the death of a grandchild of Settlor after the Division Date, the trust for such grandchild shall be held for her or his descendants, if any, or if none, shall be added equally to the then existing trusts hereunder for Settlor's other grandchildren and descendants of grandchildren.

C. *Termination of Trusts.*

The trusts shall continue, pursuant to the foregoing provisions, throughout the lifetime of Settlor's daughter, BARBARA GROVES PASCHALL, and all of Settlor's grandchildren. Upon the deaths of all of Settlor's grandchildren and Settlor's daughter, BARBARA GROVES PASCHALL, (even though there are then living descendants of a deceased grandchild or deceased grandchildren) the trusts shall continue in existence with the income thereof to thereafter be distributed at regular intervals to [Dallas Baptist University] . . . .

The trust paid income to Groves until she died in 1977. Her daughter, Barbara Groves Paschall (Barbara), and grandchildren, Sue Paschall, Barbara E. Paschall, and Charles Paschall Jr. (appellant), survived her. Upon Groves's death, the trust was divided into three equal shares corresponding to her three grandchildren. The trustee made uncontroversial distributions from appellant's share to Barbara and to appellant. Barbara is now deceased. All three grandchildren are still living. Granddaughters Sue and Barbara E. Paschall are childless. Appellant has three daughters.

Appellee, the current trustee, interprets Item II(B)(2) as authorizing it to make distributions of income and principal to appellant's daughters as current beneficiaries of his share of the trust. Appellant posits that he alone is entitled to distributions until his death, at which time his daughters will become eligible beneficiaries unless his death triggers the contingent interest of Dallas Baptist University. To resolve the issue of whether Groves intended to authorize the trustee to make distributions to a grandchild's offspring during the grandchild's lifetime, we must determine what Groves intended when she used the word "descendants" in her trust instrument.

■▬▬ The construction of a trust is a matter of law. *Eckels v. Davis,* 111 S.W.3d 687, 694 (Tex.App.-Fort Worth 2003, pet. denied). In interpreting an unambiguous trust instrument, we examine the four corners of the instrument to determine the settlor's intent. *Id.; see also San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 639 (Tex.2000) (explaining identical rules for interpreting wills). We harmonize all provisions and construe the instrument to give effect to all provisions so that no provision is rendered meaningless. *Eckels,* 111 S.W.3d at 694. When, as here, the language is unambiguous and expresses the settlor's intent, we need not construe the instrument because it speaks for itself. *Id.*

Groves did not define "descendants" within her trust instrument. The word "descendants" is susceptible to two conflicting meanings. *See Hallmark v. Port/Cooper–T. Smith Stevedoring Co.,* 907 S.W.2d 586, 591 (Tex.App.-Corpus Christi 1995, no pet.). In its strict, legal meaning, a "descendant" is the issue of a deceased person. *Id.* In popular usage, however, the word "descendants" sometimes includes the issue of a living person. *Id.*

Appellant contends the rules of construction and language of the trust instrument show Groves intended the legal definition of "descendants" to exclude the offspring of her living grandchildren. Thus, appellant contends, Groves intended his daughters be contingent beneficiaries, entitled to share in distributions from the trust only if they become his "descendants" after his death, and before the trust benefit passes to Dallas Baptist University.

Appellant points to Item II(A), where Groves identified the grandchildren as the persons for whose benefit the divided trusts would be held. Only if the grandchild predeceased Groves would a share be set aside for the dead grandchild's living descendants. Appellant points out that the trust instrument was drafted by an attorney who presumably intended to use the legal definition of "descendants." Appellant also emphasizes the import of the connecting word "or" and the qualifiers "for whom such trust is held" and "as the case may be" as signifying Groves's intent to benefit exclusively either a living grandchild or the descendants of a deceased grandchild. Appellant also contends that defining "descendants" to include his daughters would render meaningless Item II(B)(5). Finally, appellant asserts that treating his daughters as current descendants would contradict Groves's intent to treat her grandchildren equally and to favor her grandchildren and Dallas Baptist University over her more remote descendants.

Appellee responds Groves intended to use the popular meaning of "descendants" and include appellant's daughters as current beneficiaries of the trust. Appellee construes the trust instrument as establishing "per stirpes" trusts for each surviving branch of Groves's family. Appellee contends that the language allowing it to

make distributions "at any time" to appellant or his descendants indicates Groves intended to allow it the flexibility to make distributions to her great-grandchildren if such distributions were merited. Appellee points to Groves's use of the qualifier "then dead" in Item II(A), and the absence of the qualifier in Item II(B)(2), as showing her intent to use "descendants" in its popular meaning. Appellee contends Item II(A) cannot be viewed as establishing exclusively the trust beneficiaries because Item II(A) does not identify Barbara as a beneficiary, even though Item II(B)(1) provides for distributions to her from all of the trusts. Appellee denies Grove expressed any intent to treat her grandchildren equally and to exclude her remote descendants, emphasizing the harsh results to appellant's daughters.

We agree with the parties that the trust instrument is unambiguous and may be construed as a matter of law. *See Eckels*, 111 S.W.3d at 694. The use of the contextual phrases "grandchildren then living" and "living descendants of any of Settlor's grandchildren then dead" in Item II(A), and the omission of these phrases from Item II(B)(2), shows Groves understood the different meanings that could be assigned to the term "descendants." In Item II(A), Groves necessarily used the legal sense of "descendants" because that definition was useful to clarify her intent to divide her trust into separate, unduplicated shares for each surviving line of her descendants.

Once the trust was divided, however, in the remaining clauses of her trust instrument, Groves did not burden the word "descendants" with qualifiers restricting its application to the offspring of deceased grandchildren. To harmonize Item II(A) with Item II(B)(2) and Item II(B)(5), in accord with the rules of construction, we must conclude Groves's use of the word "descendants," without the restrictive qualifiers, was intentional and significant. *See id.*

The significance of using "descendants" without the restrictive qualifiers, as we read the trust instrument, was to further Groves's overarching intent, established by numerous clauses throughout the trust instrument, to grant the trustee a great degree of discretion in determining whom should receive distributions from the trust. Groves accomplished her purpose by not restricting "descendants" to "descendants of any of Settlor's grandchildren then dead" and by allowing the trustee to make such distributions to the beneficiaries "at any time."

We are not persuaded by appellant's contention that it was unnecessary for Groves to use the contextual phrases because the other qualifiers in Item II(B)(2) accomplish the same purposes and indicate that she was using "descendants" in its strict legal sense. Regarding the use of "or" in Item II(B)(2), appellant contends that using "or" rather than "and" or "and/or" suggests Groves intended the beneficiary designations as alternatives, with the trustee only able to distribute to a living grandchild *or* the descendants of a deceased grandchild. We must, however, consider the use of "or" in light of Groves's explicit distinction between "descendants of . . . grandchildren then dead" and "descendants." When read in context, we are persuaded that Groves used the connector "or" to expand the trustee's authority to consider either set of beneficiaries in making distributions. As further support for our reading, we observe that in Item II(B)(5), a provision that does not involve the trustee's discretion, Groves refers to "existing trusts hereunder for Settlor's other grandchildren *and* descendants of grandchildren." (Emphasis added).

Regarding the qualifier, "for whom such trust is held," we conclude it does limit appellee's discretion—but not as a limitation on the eligible beneficiaries. Rather, the phrase shows Groves's intent that, except for distributions to Barbara, the distributions to any beneficiary, whether a grandchild or descendant, may only come from the particular trust assigned to that grandchild's lineage. Thus, in Item II(B)(2), Groves intended to use the word "descendants" in its expansive, popular sense to mean the issue of Groves's grandchildren, leaving to appellee's discretion which of the expanded set of beneficiaries are deserving of distributions, "as the case may be."

We also dismiss appellant's contention that defining "descendants" in Item II(B)(2) in its popular sense renders meaningless Item II(B)(5). Item II(B)(5) ensures that the treatment of the share trusts established in Item II(A) will extend until the last grandchild dies and the trust benefit passes from Groves's family to Dallas Baptist University. The two provisions do not conflict.

Finally, we note our disagreement with both parties' arguments regarding the equality and fairness of Groves's trust instrument. Appellant interprets the trust instrument as requiring equal treatment for Groves's grandchildren while appellee contends Groves could not have intended to treat so harshly the descendants of the last surviving grandchild. Item II(B)(2) does state that distributions to descendants of the grandchildren need not be equal. It does not follow, however, as appellant suggests, that Groves intended to benefit her grandchildren equally. In fact, the trust instrument shows Groves understood that her grandchildren might receive unequal distributions and that her more remote descendants probably would receive unequal distributions. Groves gave the trustee absolute authority to make distributions from the trusts for the beneficiaries. Groves's effort to expressly disavow in Item II(B)(2) equal treatment for the remote descendants was intended to head off appellee's assertion that Groves could not have intended to treat her remote descendants so harshly. Rather, Groves wanted it clearly understood that at the time her last surviving grandchild dies, it is Dallas Baptist University, and not her still living descendants, who will benefit from the trust, without regard to whether the living descendants have been treated "fairly."

To guide appellee in using its authority, Groves directed in Item II(B)(4):

In exercising its discretion with respect to distribution of income and/or principal under subparagraphs 1 and 2 above, the Trustee shall bear in mind that it is Settlor's hope that the payment of funds from the trust not interfere with the personal and career development of the beneficiary to whom such funds may be paid; and that it is Settlor's wish that the distribution of any funds to any beneficiary aid him or her in his or her maintenance, care and education consistent however with his or her development as a mature person who is useful to society. Notwithstanding the foregoing, it is Settlor's direction that all distributions of income and/or principal from any of the trusts shall in all events be in the sole and absolute discretion of the Trustee and that its decisions shall be final and conclusive upon all interested persons.

Groves expressly disavowed any effort to treat her grandchildren equally and to treat her remote descendants fairly.

We conclude Item II(B)(2) authorizes appellee to make distributions to appellant's daughters during appellant's lifetime. Because Groves's trust instrument

establishes that appellant's daughters are current beneficiaries of the trust held for him, we conclude the trial court did not err in granting summary judgment to appellee. Accordingly, we overrule appellant's sole issue.

We affirm the trial court's judgment.